(No. 23358.—

August M. Trapp *et al.* Appellees, *vs.* Robert D. Gordon
*et al.* Appellants.

*Opinion filed April 16, 1937.*

Fisher, Boyden, Bell, Boyd & Marshall, for appellants.

Heineman & Langsett, for appellees.

Mr. Justice Orr delivered the opinion of the court:

We must determine in this case whether the circuit court of Cook county, in entering a decree foreclosing a purchase money mortgage of $80,000, properly denied the defendants, part of whom were not mortgage debtors, their claim to a perpetual easement of right of way across the mortgaged premises. A synopsis of the facts and pleadings will aid in understanding and deciding of the issues involved.

In 1929 the plaintiffs below, known collectively as the Trapp heirs, were the owners of a rectangular tract of fifteen acres of land adjacent to Hibbard road, in Winnetka. Two acres in the southeast corner were improved with a residence and its appurtenances. The remainder was vacant acreage. Early that year Robert D. Gordon, Raymond E. Durham and Laird Bell agreed to purchase the unimproved thirteen acres for $16,000 per acre, one-half to be paid in cash and the remainder to be evidenced by mortgage notes. Pursuant to these negotiations the Trapp heirs conveyed the improved two acres to a third party, who immediately re-conveyed the same to Lillie M. Trapp, one of the heirs, who is not a party to this action. By deed dated the same day, January 29, the Trapp heirs

conveyed the thirteen acres to the Chicago Trust Company as trustee, the three vendees, Gordon, Durham and Bell, being, the beneficiaries. Gordon, or his wife, Louise, purchased for $48,000 cash the three acres in the northwest corner of the tract, and the trustee conveyed this tract, free of encumbrance, to Louise Gordon. On February 1 the trustee, acting in obedience to instructions mutually agreed upon by all the parties on January 29, conveyed the remaining ten acres of the tract to the Chicago Title and Trust Company by trust deed, receiving $80,000 cash and mortgage notes for $80,000, to hold as trustee for the Trapp heirs. The trust deed provided for the release of parcels from the lien by payments at the rate of $8000 per acre, as the three mortgagors expected to subdivide and sell the ten acres in separate portions. The deed to Louise Gordon was never recorded and was not produced at the hearing before the master, being, presumably, lost or mislaid. No easement or reservation of a right of way was mentioned in any of the above instruments.

The land surrounding the thirteen acres was owned by the Trapp heirs and third persons. The three acres purchased separately and entirely paid for by the Gordons were in the northwest corner of the thirteen-acre tract and wholly inaccessible to any road unless an easement were provided by agreement. Likewise, upon the contemplated subdivision of the ten-acre tract, for which release provisions were made in the trust deed, there was no way of entrance for any purchaser except those who might purchase the lots immediately adjacent to Hibbard road. To remedy this situation, the defendants claim that it was orally agreed among the parties prior to closing the deal, that Gordon would build a concrete road thirty feet wide through the middle of the tract, from the corner of his three-acre plot to Hibbard road. Part of this concrete slab, twelve feet in width, was to extend over the land retained by Lillie Trapp, the remaining eighteen feet in width to be

on land held in trust for Gordon, Durham and Bell. It was also agreed that the buyers would install underground conduits for telephone, light, gas and sewers, and all of these road and utility services were to be available for use by the owners of the Trapp lot without payment of any construction costs. Defendants further allege that it was understood that these easements for roadway and other purposes were to be specifically reserved from the lien of the purchase money mortgage for the benefit of purchasers of individual lots, but that through an oversight and inadvertence the instruments were prepared and executed without these reservations.

In the spring of 1929 Gordon began the construction of a home on his three-acre lot costing in excess of $250,000, and also constructed the concrete roadway and installed the conduits at an expense of over $20,000. No objection was made by the Trapps to the laying of this road, twelve feet extending over the line of Lillie Trapp's two acres, and it has been used ever since as the sole means of access to the Gordon home. In May, 1930, Louise Gordon died intestate, leaving her husband and four minor sons as her heirs-at-law, all of whom are defendants and appellants.

Upon default in payment of the $80,000 trust deed covering the ten acres foreclosure proceedings were begun. To the bill of foreclosure the defendants filed verified answers, contending the plaintiffs were not entitled to a decree free and clear of the right of way to the Gordon tract for three reasons—i. e., (1) that the Gordon tract would be isolated from the public highway with no way of ingress and egress except over the ten-acre tract, therefore the circumstances gave rise to an easement by necessity; (2) that an oral agreement existed between the vendors and vendees for the construction of the road, confirmed by the actual construction of the road, thus removing the case from the operation of the Statute of Frauds, and estopping plaintiffs, now seeking affirmative relief, from denying the existence of

the easement; (3) through mutual mistake of the parties to the trust deed there was a failure to except from the lien of the mortgage the easements in favor of the Gordon tract and the future purchasers of other tracts, therefore such mistake was subject to correction by reformation of the instrument until the right was cut off by the intervention of a *bona fide* purchaser for value, and was available against the plaintiffs, who were parties to the original transactions.

Issues were joined on the answers and the case was referred to the master. The defendants made the following offers of proof: (1) The construction of a roadway, with twelve feet thereof projecting over the property of Lillie Trapp for the full length of her north line, from Hibbard road on the east line of the ten-acre tract, running west through the middle of this tract to the southwest corner of the Gordon tract; (2) that in May, 1929, Lillie Trapp as the owner of the southeast two acres, Louise Gordon and Robert Gordon as the owners of the northwest three acres, and the Chicago Trust Company as the trustee and owner of the mortgaged ten acres, executed a plat dedicating an easement covering the roadway, which was never recorded or the dedication legally completed; (3) that in 1933, Gordon, as the administrator of the estate of Louise Gordon, deceased, gave a perpetual easement to the Illinois Bell Telephone Company in the roadway for conduits; (4) that it was orally agreed between the Trapp heirs and Gordon, as part of the original transaction, that he should have the right and duty at his own expense to build the roadway as subsequently built, for the benefit of all the parties; (5) that by mutual mistake of fact the easement was not reserved in the mortgage trust deed, or express grant thereof inserted in the original deed from the plaintiffs to the trustee; (6) that the roadway was constructed with the knowledge of the plaintiffs and without their interposing any objection thereto; (7) that no way of ingress or egress

exists except over the mortgaged ten acres; (8) that the parties were represented by a common broker, his commissions being paid by the plaintiffs, who could also testify, with Gordon, as to the various agreements.

The master in chancery indicated by his rulings that the three propositions first above mentioned were untenable as a matter of law, and held that all transactions prior to the deed merged therein. The defendants endeavored to secure an order of the circuit court directing the master to receive the proof offered in support of the three propositions. The court refused to grant the order, stating that the three propositions, if true, did not entitle the defendants to relief. A decree was entered in accordance with the recommendations of the master, awarding foreclosure free and clear of the roadway easement. As the case now stands, if undisturbed, the owners of the Gordon tract will have to pay to the plaintiffs the mortgage indebtedness of $80,000 if they hope to continue in the use of the roadway, although their tract is not subject to the mortgage. The validity of the mortgage trust deed or the amount due upon it, is not questioned.

Our jurisdiction on direct appeal of a suit brought to foreclose a mortgage, where an easement of right-of-way across the mortgaged premises is directly involved, must first receive consideration. As seen above, plaintiffs joined certain persons as defendants in this proceeding who were not mortgage debtors but who had or claimed an easement. The title to this purported easement was squarely put in issue by the pleadings, denied by the trial court, preserved for review by assignments of error and pressed for consideration in this court by both appellants and appellees. In fact, the only disputed issue raised in this appeal is whether the lien of the mortgage was paramount to the easement.

Prior to the adoption of the Civil Practice act, effective January 1, 1934, this court had held in many foreclosure

cases that where the question of a freehold depends upon the existence of a lien on land, no freehold is involved even though the litigation may result in the loss of a freehold (*Kagy* v. *Luke,* 357 Ill. 512, and cases cited;) and that no freehold is involved if the defendant may defeat the object of the suit by making payment or doing some other act to stop the sale. (*Becker* v. *Fink,* 273 Ill. 560; *Wachsmuth* v. *Penn Mutual Life Ins. Co.* 231 id. 29.) On the other hand, we had often assumed jurisdiction on direct appeal in foreclosure suits where other issues in the same proceeding directly involved a freehold. (*Way* v. *Roth,* 159 Ill. 162; *Foote* v. *Marggraf,* 233 id. 48; *Stevenson* v. *Lewis,* 244 id. 147; *Sullivan* v. *Abbott,* 335 id. 129.) Regardless of the reasons assigned in these former decisions for taking or refusing to take jurisdiction of such cases on direct appeal, we are convinced that in the present case, where the issues involving and parties claiming a freehold interest in mortgaged premises are properly joined in a foreclosure suit, the Civil Practice act confers jurisdiction upon this court by direct appeal. Section 23 of the Civil Practice act permits the joinder of plaintiffs in one action where "any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, where if such persons had brought separate actions any common question of law or fact would arise," etc. This principle is applied to defendants in section 24, which provides: "(1) Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the same arose, or whom it is necessary to make a party for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising

out of the same transaction or series of transactions, regardless of the number of causes of action joined." These first two paragraphs of sections 23 and 24, are specific treatments of the joinder of plaintiffs and defendants, and also bear, with equal force, upon the joinder of causes of action. Because of the latter, these sections must be studied in the light of sections 43 and 44 of the act. Section 43 gives the manner of pleading joined claims, reciting that "(1) Parties may plead as many causes of action, counterclaims, defenses, and matters in reply or rejoinder as they may have," etc. Section 44 reads in part: "(1) Any plaintiff or plaintiffs may join any causes of action, whether legal or equitable or both, against any defendant or defendants; and * * * the defendant may set up in his answer any and all cross-demands, whatever, whether in the nature of recoupment, set-off, cross-bill in equity or otherwise, which shall be designated counterclaims."

Here there are several plaintiffs and several defendants. The plaintiffs are seeking two remedies,—*i. e.*, (1) the foreclosure of the trust deed, and (2) the erasure of the claimed easement. The Gordon heirs, who are some of the parties defendant, are interested in the foreclosure because it affects their claimed easement, which, if not sustained, might block their means of egress and ingress from Hibbard road to their estate. Whatever the interest of each of the several plaintiffs and defendants, it arises out of the same transaction or series of transactions having to do with the original sale and purchase of the whole property. The interests of each of the parties plaintiff and defendant can well be ascertained and adjudicated in one action. The existence or non-existence of a perpetual easement,—*i. e.*, a freehold (*Cuneo* v. *Chicago Title and Trust Co.* 337 Ill. 589;) in the property sought to be foreclosed is therefore necessarily involved, and the case properly comes here by direct appeal under section 75 of the Civil Practice act.

The Trapp heirs deeded the thirteen acres to the Chicago Trust Company on January 29, 1929. That same day the two-acre tract was conveyed to Lillie Trapp, and the beneficiaries gave the Chicago Trust Company written instructions to execute and deliver the notes and mortgage trust deed and convey the three acres to Louise Gordon. From an equitable standpoint, these events were interdependent and were performed or directed to be performed at the same time. They were contemporaneous, in that they were all component parts of and grew out of the same transaction or series of transactions. While it is the general rule that all prior verbal understandings or agreements with reference to the subject matter become merged in a deed upon its acceptance and the deed constitutes the only contract between the parties which binds them, (*Snyder* v. *Griswold,* 37 Ill. 216; *Ely* v. *Ely,* 80 id. 532; *Weber* v. *Aluminum Ore Co.* 304 id. 273;) yet this rule, like many other rules in the field of law, is subject to exceptions and qualifications. Where the contract provides for other acts besides the conveyance, the contract remains in force after the delivery of the deed until it has been fully performed. (*Biewer* v. *Mueller,* 254 Ill. 315; *Platt* v. *Ætna Ins. Co.* 153 id. 113; *Ludeke* v. *Sutherland,* 87 id. 481.) In the case of *Laflin* v. *Howe,* 112 Ill. 253, we considered a contract for the sale of land and certain buildings thereon. The price of the buildings was to be fixed by appraisement. We held the deed for the land did not supersede the provisions for the sale of the buildings, saying: "The only reasonable construction to be placed on the contract is, that the sale of the buildings on the lots was a separate and distinct matter from the sale of the land,—so understood, so agreed upon and so treated by the two contracting parties,—and the execution and delivery of the deed merged only that part of the contract relating to the sale of the land, leaving in full force and effect that portion of the contract relating to the sale of the buildings; and on the trial, while this

action was not based upon that agreement, the plaintiff had a right to use it in evidence upon any branch of his case whereon it had any bearing." The deed effects a merger only to the extent that it is contemplated that the deed shall constitute a full performance of the contract. (*Miller v. Kemp,* 157 Va. 178, 160 S. E. 203, 84 A. L. R. 980.) Where, as an element of the consideration and an inducement to purchase land, the grantor agreed to maintain dams in a river forming one boundary of the land, which provision was not incorporated into the deed, it was held that this provision did not merge therein and remained enforcible. *Shelby* v. *Chicago and Eastern Illinois Railroad Co.* 143 Ill. 385.

This is a suit in equity, and courts of equity look to the substance rather than to the form of written instruments, and seek to discover and carry into effect the real intention of the parties, gleaned not only from the written instruments they executed but from their subsequent acts and conduct with reference thereto. (*Ogden* v. *Stevens,* 241 Ill. 556.) Here, as part of one transaction, or series of connected transactions, the Trapp heirs conveyed the land-locked three-acre tract to Louise Gordon as a home site, and the front ten-acre tract to the trustee for subdivision purposes, for a total cash consideration of $128,000, and agreed to accept notes secured by a trust deed for the remaining $80,000, payable as the acreage was sold. They must be charged with knowledge that since they were paid in full their price of $48,000 for the land-locked three acres deeded separately to Louise Gordon for a home site, she and her family would of necessity be entitled to a right of way out to Hibbard road over the ten-acre tract conveyed by them to the trustee as part of the same transaction. Where the owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way by necessity exists over the remaining lands of the grantor. (*Gilfoy* v. *Ran-*

*dall,* 274 Ill. 128, and many authorities there cited.) The fact that here the Trapp heirs, as a matter of their own convenience, first conveyed their interest in the land to a trustee makes no difference, since the conveyances and trust deed were all part of one common undertaking executed at or about the same time, prior to which the Trapp heirs owned all the land involved. The evidence will not support any other view than that the parties or their attorneys in their hurry to conclude the sale and purchase, after involved negotiations extending over a period of time, inadvertently failed to exempt the easement from the mortgage trust deed. The evidence shows that this expensive concrete highway from Hibbard road across the ten-acre tract to the corner of the Gordon lot was constructed in compliance with a verbal agreement between the parties. This road benefited not only the Gordon lot but also the two-acre tract of Lillie Trapp and the ten-acre tract now being foreclosed by the Trapp heirs. As a grantor, who is not a party to this suit, Lillie Trapp performed all the acts she was required to perform under the agreement. The evidence admitted in the court below, taken with the offer of proof which should be admitted under proposition three, shows that she gave twelve feet of her ground for the roadway, joined in the attempt to legally plat and dedicate the highway to public use, and joined in granting the easement for the conduits. The same type of evidence conclusively shows that Gordon and his associates have fully performed their part of the verbal agreement and have constructed the road. Such performance takes the case from the operation of the Statute of Frauds, and the plaintiffs are equitably estopped from denying the existence of the oral agreement by which the perpetual easement was established. *Kane* v. *Hudson,* 273 Ill. 350, and cases cited therein.

The plaintiffs have assigned cross-error on the refusal of the lower court to tax the master's fees of $300 against the defendants. On the record we perceive no error in

this. The chancellor erred, however, in refusing to allow proof tendered in support of the perpetual easement of a right of way to be introduced in evidence.

The decree of foreclosure is therefore reversed and set aside and the cause is remanded with directions to accept the proof offered in support of the claims to an easement, and to reform the trust deed to exempt the easement from the lien thereof in case the proof reasonably substantiates the claims made in that behalf.

*Affirmed in part, reversed in part,*
*and remanded, with directions.*