(No. 58947.—

RONALD G. LENZI *et al.*, Appellants, v. RUTH A. MORKIN, Indiv. and as Ex'r and Trustee, Appellee.

*Opinion filed September 20, 1984.*

Leon C. Wexler, of Chicago, for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Robert E. Deignan, George H. Olsen and Gerald L. Maatman, Jr., of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Ronald G. Lenzi and Geraldine J. Lenzi, appealed from the judgment of the circuit court of Cook County entered upon allowance of the motion to dismiss plaintiffs' action against defendant, Ruth A. Morkin, individually, as co-executrix of the estate of Alma M. Dalmar, and as co-trustee of the Alma Dalmar 1979 Trust. The appellate court affirmed (116 Ill. App. 3d 1014), and we allowed plaintiffs' petition for leave to appeal (87 Ill. 2d R. 315).

It was alleged in plaintiffs' complaint that the parties entered into a contract in which plaintiffs agreed to purchase a house from defendant and that the sale was consummated on May 27, 1981. The contract, attached to the complaint as an exhibit, was executed on March 23, 1981. It was alleged that on February 26, 1981, defendant received notice from the assessor of Cook County that the valuation of the property was increased from $18,712 to $27,201. The contract provided for a proration of real estate taxes as of the date plaintiffs were given possession "based on most recent ascertainable

taxes." The 1979 taxes were based on a valuation of $18,712. Plaintiffs also alleged that defendant "intentionally failed to disclose" the increase in assessed valuation and knew that the purchasers relied upon the last tax bill to determine the most recent ascertainable taxes when, in fact, the reassessment provided a means for ascertaining taxes in excess of the last real estate tax bill.

The appellate majority noted that real estate taxes are calculated based on three factors: the assessed value of the property, the State equalization factor (Ill. Rev. Stat. 1981, ch. 120, par. 630), and the applicable tax rate (Ill. Rev. Stat. 1981, ch. 120, par. 643). (116 Ill. App. 3d 1014, 1016.) The exact real estate tax for a particular parcel of real estate cannot be determined until each of these factors has been ascertained by the appropriate governmental authority. Plaintiffs did not allege that the equalization factor and the tax rate which would be applied to the new valuation had been established; therefore, the general taxes for the year 1980 were not "ascertainable." It held as a matter of law that the "most recent ascertainable taxes" were reflected in the 1979 tax bill. 116 Ill. App. 3d 1014, 1016-17.

Plaintiffs contend that because defendant knew that the valuation had been increased and the reassessment provided a means for ascertaining that the taxes would be substantially greater than those reflected in the 1979 tax bill, a duty to disclose this material fact arose and the failure to discharge that duty constituted fraud.

We do not agree that defendant was under a duty to disclose the new valuation. As pointed out by the appellate court, the valuation placed on the property was a matter of public record and not a matter solely within the knowledge of defendant. The parties could have provided in the contract for a pro-rata adjustment of taxes based on information available at the time of closing or for an adjustment based on a change of circumstances.

Under the terms of the contract, however, plaintiffs assumed the risk that the bill for taxes levied upon the property for 1980 would be higher than those for 1979 and defendant assumed the risk that the 1980 tax bill would be less than the 1979 tax bill, thereby obligating her to pay a disproportionate share of the taxes. Changes in circumstances are normal risks attendant to pro-rata adjustments of this type and did not create a duty on the part of defendant to advise plaintiffs of an action which was a matter of public record.

Plaintiffs contend that the definition of the phrase "most recent ascertainable taxes" was a question of fact which should have been determined by a jury. In support of this argument they cite *Frey v. Belleville News-Democrat, Inc.* (1978), 64 Ill. App. 3d 495. In *Frey,* an action for defendant's wrongful use of plaintiffs' customer list, the appellate court held that the circuit court erred in granting summary judgment for the defendant and that plaintiffs should have the opportunity to present evidence, which, if believed by the jury, could have shown the existence of a contract implied in fact. Here, the question is not whether there was a contract, but rather the meaning of the phrase "most recent ascertainable taxes" as expressed in the contract. "The meaning of a written contract is ordinarily a question of law and not one of fact." (*Chicago Daily News, Inc. v. Kohler* (1935), 360 Ill. 351, 363.) In the absence of an ambiguity, the intention of the parties at the time the contract was entered into must be ascertained by the language utilized in the contract itself, not by the construction placed upon it by the parties. (360 Ill. 351, 364.) Because the assessed valuation could not be the basis to determine a tax bill when the equalization factor and the tax rate had not been established, the appellate court correctly held that the "most recent ascertainable taxes" were those reflected by the 1979 tax bill.

For the reasons herein stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*