Docket No. 104469.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

———————————

EDWARD J. CZAROBSKI *et al.*, Appellees, v. GRZEGORZ LATA
*et al.*, Appellants.

*Opinion filed January 25, 2008.*

JUSTICE FITZGERALD delivered the judgement of the court,
with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiffs, Edward and Annette Czarobski, purchased a home from
defendants, Grzegorz and Anna Latta. After plaintiffs learned that the
real estate taxes on the home were more than the credits they received
at closing, they filed an action in the circuit court of Cook County
against defendants seeking money damages based on a reproration.
The circuit court granted defendants' section 2–619 motion to dismiss
(735 ILCS 5/2–619 (West 2006)), accepting defendants' argument
that the merger doctrine precluded recovery by plaintiffs. The
appellate court reversed the judgment of the circuit court, holding that
the merger doctrine did not apply to plaintiffs' cause of action, and
remanded the cause to the circuit court for further proceedings. 371

Ill. App. 3d 346. For the reasons discussed below, we affirm the judgment of the appellate court.

BACKGROUND

In June 2005, plaintiffs and defendants entered into a real estate contract for the purchase and sale of certain residential property located in Orland Park, Illinois. The contract provided for proration of real estate taxes as follows:

> "Prorations of general taxes shall be on the basis of 105% of the last ascertainable bill. If said bill [is] based on a partial assessment or on an unimproved basis for improved property, a written agreement (with escrow) for final proration when the complete assessment information is available from the County Assessor shall be signed at closing by the parties hereto."

At the September 14, 2005, closing, plaintiffs received a real estate tax credit of $3,025.92 for 2004, and a credit of $4,076.08 for 2005. The credits were based on the 2003 real estate tax figure, as shown on the title commitment, prorated according to the above contract provision. After closing, the final 2004 tax bill issued, disclosing a tax liability of $7,876.59, substantially more than the $3,025.92 credit plaintiffs received at closing.

According to the allegations of plaintiffs' complaint, upon receipt of the 2004 tax bill, investigation revealed that the 2003 tax figure was based on a partial assessment.[1] Plaintiffs' position was summed up in an October 12, 2005, letter from plaintiffs' attorney to defendants' attorney, which was attached to the complaint. The letter stated:

> "Enclosed is a copy of the tax bill that just came out ***. As you can see, taxes went up quite a bit. We checked with the county to find out why. They tell us that the 2003 bill was based on a partial assessment. No one had disclosed that fact

---

[1]The record here fails to disclose the reason for the partial assessment. Such an assessment could result where, for example, structures on the property are rendered uninhabitable for a portion of the year, or new structures are not yet fully completed. See 35 ILCS 200/9–180 (West 2006); *People ex rel. Nelson v. Jenkins*, 347 Ill. 278, 280 (1932); *Long Grove Manor v. Property Tax Appeal Board*, 301 Ill. App. 3d 654, 655-57 (1998).

-2-

to us at or prior to closing. In these types of situations, under the contract we should have entered into a re-proration agreement.

The amount due from your client to mine for 2004 taxes is $4,850.67 (the actual bill of $7,876.50 less the credit *** of $3,025.92).

The amount due from your client to mine for the reprorated 2005 taxes is $3,780.93 (10,627.43 x105% = 11,158.80/365 x 257 = 7,857.01-4,076.08 ***). The total due then [is] $8,631.60."

Plaintiffs alleged that the discrepancy in the taxes was "either a mutual mistake of fact, or was known by the defendants and not disclosed by them." Plaintiffs sought damages of $8,631.60, plus court costs.

Defendants answered the complaint, generally denying that plaintiffs were entitled to a reproration. Defendants also asserted, as an affirmative defense, that they "had no knowledge that any real estate taxes, past or present, were based on a partial assessment," and that defendants gave to plaintiffs "what they believe was a proper real estate tax credit at the time of closing based upon the available information and per the contract."

Defendants also filed a motion to dismiss under section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 2006)). Defendants argued that under the merger doctrine the real estate contract merged into the deed, thus precluding recovery by plaintiffs. Although plaintiffs argued that mutual mistake and fraudulent concealment are recognized exceptions to the merger doctrine, defendants argued that this court had never sanctioned a broad mutual mistake exception and that, in any event, this court's opinion in *Lenzi v. Morkin*, 103 Ill. 2d 290 (1984), controlled. The circuit court granted defendants' motion to dismiss with prejudice. Plaintiffs appealed.

The appellate court reversed the judgment of the circuit court. 371 Ill. App. 3d at 351. The appellate court distinguished *Lenzi* because the merger doctrine was not at issue in that case, and held that the doctrine does not apply to plaintiffs' action for real estate taxes. 371 App. 3d at 348-51. We allowed defendants' petition for leave to appeal. See 210 Ill. 2d R. 315.

-3-

ANALYSIS

A motion for involuntary dismissal under section 2–619 admits the legal sufficiency of the plaintiff's claim but asserts "affirmative matter" outside of the pleading that defeats the claim. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002); 735 ILCS 5/2–619(a)(9) (West 2006). The purpose of a section 2–619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Invocation of the merger doctrine is an affirmative matter properly raised in a section 2–619 motion. See *Neppl v. Murphy*, 316 Ill. App. 3d 581, 585-86 (2000). When ruling on such a motion, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68. On appeal from a section 2–619 motion, the reviewing court "must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review proceeds *de novo*. *Van Meter*, 207 Ill. 2d at 368.

The doctrine of "merger by deed" (also referred to as simply the "merger doctrine" or "merger rule") is well established in our case law. Under this doctrine, all prior agreements between a buyer and a seller are merged in the deed upon its acceptance. *Daniels v. Anderson*, 162 Ill. 2d 47, 63 (1994); *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 38 (1979); *Chicago Title & Trust Co. v. Wabash-Randolph Corp.*, 384 Ill. 78, 87 (1943); *Trapp v. Gordon*, 366 Ill. 102, 110 (1937). The deed supersedes the provisions of the real estate contract and becomes the only binding instrument between the parties. *Daniels*, 162 Ill. 2d at 63; *Trapp*, 366 Ill. at 110. The merger doctrine evolved to protect the security of land titles (*Petersen*, 76 Ill. 2d at 39), and brings finality to real estate contracts. See B. Goldman & V. Berghel, *Common Law Doctrine of Merger: The Exceptions Are the Rule*, 13 U. Balt. L. Rev. 19, 20 (1983).

This court has recognized an exception or qualification to the merger rule where the contract contains provisions that delivery of the deed does not fulfill. As to those provisions, the contract is not merged in the deed, and the contract remains in force until the contract has been fully performed. *Daniels*, 162 Ill. 2d at 63; *Petersen*,

76 Ill. 2d at 39; *Chicago Title & Trust Co.*, 384 Ill. at 87; *Trapp*, 366 Ill. at 110. Illinois courts have applied this exception where, for example, the contract created an easement that was not referenced in the deed (*Daniels*, 162 Ill. 2d at 64); the contract expressly warranted the condition of the heating system at closing (*Neppl*, 316 Ill. App. 3d at 591); and the contract called for construction of a building on the conveyed property (*Brownell v. Quinn*, 47 Ill. App. 2d 206, 209 (1964)). In each instance, the court determined that the contractual provision was an independent or collateral undertaking, incidental to the main purpose of the agreement, and did not merge with the deed.

Plaintiffs, however, do not rely upon this exception to the merger rule, but upon two exceptions recognized by our appellate court: mutual mistake or misrepresentation when the deed was delivered. See *Beal v. Schewe*, 291 Ill. App. 3d 204, 211 (1997) (recognizing mutual mistake and misrepresentation exceptions to merger rule); *Batler, Capitel & Schwartz v. Tapanes*, 164 Ill. App. 3d 427, 429 (1987) (same); *Hagenbuch v. Chapin*, 149 Ill. App. 3d 572, 576-77 (1986) (recognizing exception to merger doctrine where the parties were mutually mistaken about the parcel's acreage).

Plaintiffs direct our attention to *Holec v. Heartland Builders, Inc.*, 234 Ill. App. 3d 253 (1992), which the appellate court here found persuasive. In *Holec*, the Second District held that the merger doctrine did not apply where the parties were mutually mistaken about the latest assessed valuation, and the buyer was entitled to a judgment for the difference in the taxes. *Holec*, 234 Ill. App. 3d at 255, 257.

Defendants direct our attention to *Chapman v. Anchor Lumber*, 355 Ill. App. 3d 435 (2005). In *Chapman*, the Third District declined to follow *Holec* and held that the buyer could not recover real estate taxes where the parties miscalculated the tax proration based on a mutual mistake of fact. *Chapman*, 355 Ill. App. 3d at 438. *Chapman* explained: "Because our supreme court has not sanctioned a broad mutual mistake exception to the merger doctrine, we find no compelling reason to follow the Second District's holdings in *Batler* and *Holec*." *Chapman*, 355 Ill. App. 3d at 438.

Although *Chapman* is correct that this court "has not sanctioned a broad mutual mistake exception to the merger doctrine" (*Chapman*, 355 Ill. App. 3d at 438), we agree with the appellate court's observation here that "neither has [this court] prohibited such an

exception" (371 Ill. App. 3d at 351). The simple fact is that this court has never been called upon to consider whether a mutual mistake or misrepresentation of a material fact should be recognized as exceptions to the merger doctrine. We note that several of our sister states have recognized fraud and mistake as exceptions to the doctrine. See, *e.g.*, *Swanson v. Green*, 572 So. 2d 1246, 1248 (Ala. 1990); *Croswhite v. Rystrom*, 256 Ark. 156, 162, 506 S.W.2d 830, 833 (1974); *Emerald Pointe, L.L.C. v. Jonak*, 202 S.W.3d 652, 661 (Mo. App. 2006); *Barela v. Locer*, 103 N.M. 395, 396, 708 P.2d 307, 310 (1985); *Lively v. Davis*, 410 P.2d 851, 856 (Okla. 1966); *Secor v. Knight*, 716 P.2d 790, 792 (Utah 1986); *Taylor v. McConchie*, 264 Va. 377, 383, 569 S.E.2d 35, 38 (2002). We note, too, that this court has long held that mutual mistake, or mistake of one side and fraud on the other, may give rise to a claim for reformation of a written contract. *Fisher v. State Bank of Annawan*, 163 Ill. 2d 177, 182 (1994), quoting *Suburban Bank of Hoffman-Schaumburg v. Bousis*, 144 Ill. 2d 51, 58-59 (1991), quoting *Harley v. Magnolia Petroleum Co.*, 378 Ill. 19, 28 (1941). Mutual mistake also may give rise to a claim for reformation of a deed. *Harley*, 378 Ill. at 27. Accordingly, we discern no principled basis, and defendants offer none, for adopting a blanket rule of law that would prohibit a party, in an appropriate case, from arguing against application of the merger rule where the party claims that a mutual mistake or fraud existed at the time of conveyance of the deed. The question, however, remains: Is this an appropriate case for application of either exception? We consider first the mutual mistake exception.

Defendants admitted, in their affirmative defenses, that they had no knowledge of a partial assessment, and that they gave to plaintiffs what they believed was a proper tax credit at closing. Notwithstanding this admission, defendants argue that, under the principles set forth in this court's opinion in *Lenzi*, plaintiffs cannot rely on a mutual mistake exception to escape application of the merger rule.

*Lenzi* involved a postclosing claim by the buyers for real estate taxes. Under the contract, taxes were to be prorated based on the " 'most recent ascertainable taxes.' " *Lenzi*, 103 Ill. 2d at 291-92. At the closing, the tax proration was based on the 1979 tax bill. After the closing, an increase in the 1980 general taxes occurred, which was greater than the tax proration, triggering the litigation. The plaintiffs

alleged that prior to execution of the real estate contract, the defendant received notice from the county assessor of an increase in the assessed valuation of the property. The plaintiffs claimed that the defendant intentionally failed to disclose such increase and knew that the plaintiffs relied on the 1979 tax bill, which did not reflect the increase, to determine the most recent ascertainable taxes. The plaintiffs sought an additional tax proration of approximately $2,800. The circuit court granted the defendant's section 2–619 motion to dismiss; the appellate court affirmed. *Lenzi v. Morkin*, 116 Ill. App. 3d 1014 (1983).

On appeal to this court, the plaintiffs argued that the defendant was under a duty to disclose the increase in the assessed valuation and that the defendant's failure to discharge this duty constituted fraud. We rejected the plaintiff's argument:

> "We do not agree that defendant was under a duty to disclose the new valuation. As pointed out by the appellate court, the valuation placed on the property was a matter of public record and not a matter solely within the knowledge of defendant. The parties could have provided in the contract for a pro-rata adjustment of taxes based on information available at the time of closing or for an adjustment based on a change of circumstances. Under the terms of the contract, however, plaintiffs assumed the risk that the bill for taxes levied upon the property for 1980 would be higher than those for 1979 and defendant assumed the risk that the 1980 tax bill would be less than the 1979 tax bill, thereby obligating her to pay a disproportionate share of the taxes. Changes in circumstances are normal risks attendant to pro-rata adjustments of this type and did not create a duty on the part of defendant to advise plaintiffs of an action which was a matter of public record." *Lenzi*, 103 Ill. 2d at 292-93.

We also held that the taxes reflected in the 1979 tax bill were, in fact, the "most recent ascertainable taxes." We agreed with the appellate court that because real estate taxes are based on three factors–the assessed value, the equalization factor, and the tax rate–the new assessed valuation, standing alone, could not be the basis to determine a tax bill, and no error occurred in the tax proration. We thus affirmed the appellate court. *Lenzi*, 103 Ill. 2d at 293-94.

Plaintiffs argue, and we agree, that *Lenzi* is distinguishable from the case at bar. First and foremost, the defendant in *Lenzi*, unlike defendants here, did not invoke the merger rule in her section 2–619 motion to dismiss. Even if the defendant in *Lenzi* had pled the merger rule, the plaintiffs could not have claimed mutual mistake where they alleged in their complaint that the defendant had notice of the new assessed valuation prior to the entry of the real estate contract. Thus, *Lenzi* did not address the merger and mutual mistake issues now before us.

In addition, unlike the contract in *Lenzi*, which made no provision "for a pro-rata adjustment of taxes based on information available at the time of closing or for an adjustment based on a change of circumstances" (*Lenzi*, 103 Ill. 2d at 292), the contract here expressly provided a mechanism for a postclosing adjustment, namely, the execution of a written contract providing for a final proration when the complete tax information became available from the county assessor. Only because the parties were mutually mistaken about the basis for the 2003 taxes did the parties fail to execute such a contract at closing, as contemplated by the parties and required by the real estate contract.

Finally, we note that the plaintiffs in *Lenzi* sought an additional proration based upon a subsequent increase in the 1980 general taxes. Such a "change in circumstances," we concluded, was a risk the plaintiffs assumed under the contract. *Lenzi*, 103 Ill. 2d at 292. Although plaintiffs here also assumed the risk, under the contract, that the tax proration would be insufficient to cover an increase in the general taxes, plaintiffs' cause of action is not predicated on a subsequent tax increase or a similar "change in circumstances." Rather, plaintiffs' cause of action is based on the parties' mistaken belief as to a then-existing fact: the basis for the 2003 taxes.

Defendants contend that these distinctions are immaterial and that *Lenzi* yet controls. Defendants argue that under *Lenzi*, "buyers must be responsible for diligently researching the tax record," and allowing a claim of mutual mistake under the facts of this case would relieve home buyers "from performing the customary diligence prior to purchasing a home." In a related vein, defendants argue that a party claiming mutual mistake must have exercised due care. See *In re Marriage of Agustsson*, 223 Ill. App. 3d 510, 519 (1992) (party

seeking rescission of contract based on a unilateral or mutual mistake must demonstrate, *inter alia*, that "the mistake occurred notwithstanding the exercise of due care" by that party). Defendants maintain that plaintiffs here failed to exercise due care by failing to do what is "customary" in a real estate transaction, namely, searching the public tax records prior to closing. According to defendants, because plaintiffs proceeded in "conscious ignorance" of the facts that formed the basis of their claim for taxes, plaintiffs cannot rely on the mutual mistake exception to the merger rule. See *Harley*, 378 Ill. at 30 ("To constitute a mistake which will be relieved against, the mutual ignorance of facts must be unconscious").

We agree that under Illinois law, a mistake that results from a party's lack of due care may be insufficient to support a claim of mutual mistake. But see Restatement (Second) of Contracts §157, Comment *a*, at 416 (1981) (avoidance or reformation of a contract is not necessarily precluded by the "mere fact that a mistaken party could have avoided the mistake by the exercise of reasonable care"). Nonetheless, we reject defendants' due-care argument. Defendants equate due care with "customary practices" in the field of real estate law and contend that a preclosing search of the public tax records by buyers is customary practice. While a search of the tax records might be prudent practice, defendants cite to no authority supporting the proposition that due care requires such a search in every real estate transaction, irrespective of the particular facts and circumstances. Defendants' reliance on *Lenzi* for this proposition is unavailing. *Lenzi* did not consider customary practices incidental to real estate transactions, nor did *Lenzi* consider what constitutes due care for purposes of the mutual mistake exception to the merger doctrine.

Furthermore, defendants' argument as to what constitutes customary practice in real estate transactions is contrary to the position defendants advanced in the trial court. In their reply brief in support of their section 2–619 motion, defendants stated: "As a matter of standard practice, the title company searches the tax assessor's records and inputs the tax amount on the title commitment, which is used to calculate the tax amount on the closing statement relied upon by all parties. As [a] matter of accepted practice, but specifically in this case, neither party bore the sole responsibility of calculating prorations." Defendants cannot now claim that customary or standard

practice required something different of plaintiffs. See *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007) ("A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court").

We conclude, as the appellate court did, that plaintiffs may avail themselves of the mutual mistake exception to the merger doctrine and that the trial court erred in dismissing plaintiffs' complaint. To the extent the *Chapman* opinion on which defendants rely is inconsistent with our holding, it is hereby overruled.

Because we have already determined that, under the facts of this case, the mutual mistake exception to the merger rule applies, we find it unnecessary to consider plaintiffs' alternative argument based on a fraud exception and defendants' arguments relative thereto.

## CONCLUSION

For the reasons stated, we affirm the judgment of the appellate court, which reversed the judgment of the circuit court and remanded this matter to the circuit court for further proceedings.

*Affirmed.*