# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Burress-Taylor v. American Security Insurance Co.*, 2012 IL App (1st) 110554

---

| | |
|---|---|
| Appellate Court Caption | OLLIA BURRESS-TAYLOR, Plaintiff-Appellant, v. AMERICAN SECURITY INSURANCE COMPANY, and HANOVER FIRE CASUALTY INSURANCE COMPANY, f/k/a Philanthropic Mutual Fire Insurance Company, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-0554 |
| Filed | October 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of plaintiff's complaint against one of her insurers for a declaratory judgment, breach of contract, and a violation of the Consumer Fraud Act in connection with her insurance claim for the fire damage to her home was reversed, where her complaint was not barred by the one-year limitation in the policy and the complaint stated the elements of a consumer fraud claim. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-32135; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Anita Dellaria and Ilan Chorowsky, both of Progressive Law Group LLC, of Chicago, for appellant.

William G. Beatty, Meghan M. Sciortino, David M. Macksey, and Garrett L. Boehm, Jr., all of Johnson & Bell, Ltd., of Chicago, for appellee American Security Insurance Company.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion. Justices Garcia and Gordon concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Ollia Burress-Taylor appeals the dismissal of her complaint against defendant American Security Insurance Company. We reverse.

¶ 2    After a fire damaged plaintiff's home, plaintiff brought this action for breach of contract, deceptive conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)) and a declaratory judgment against defendant, seeking to recover insurance proceeds under her claim. The trial court granted defendant's motion to dismiss plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2008)).

¶ 3    The facts as alleged in plaintiff's complaint are as follows. Plaintiff's home was secured by a mortgage from Homecomings Financial, LLC (Homecomings). Plaintiff had a "force-placed" residential insurance policy included in her mortgage. A "force-placed" insurance policy is a policy procured by the lender, in this case Homecomings. The policy was underwritten by defendant and provided for $124,000 in dwelling coverage. The policy contained an "Other Insurance" provision. The provision states that "[i]f there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted." The policy also contained an "Illinois Amendatory Endorsement" (endorsement) that states, in part:

"No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

This one year period will be extended by the number of days between the date the Proof of Loss was filed and the date the claim is denied in whole or in part."

¶ 4    Plaintiff's home was also insured by a policy that she procured from Hanover Fire Casualty Insurance Company (Hanover). The Hanover policy provided for $100,000 in dwelling coverage and $15,000 in contents coverage. Hanover's policy contained a "Pro Rata Liability" clause. The clause states that Hanover "shall not be liable for a greater proportion

of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not." Both policies, defendant's and Hanover's, covered losses to plaintiff's home caused by a fire.

¶ 5    In August 2006, plaintiff's home was damaged by a fire. Sometime before November 30, 2006, plaintiff submitted her claims to defendant and Hanover. On that date, a Hanover claims adjuster estimated the property damage to plaintiff's home to be $142,573.15 less $14,666.19 in depreciation, for a total loss of $127,906.96. The claims adjuster informed plaintiff that Hanover's ratio of coverage for the loss was 44.45%, *i.e.*, $56,854.64, while defendant's ratio of coverage was the remaining 55.55% or $71,052.32. This ratio was based on combining defendant's and Hanover's coverage and allocating to Hanover its *pro rata* share of the total coverage provided by the insurance companies. Hanover issued a check in the amount of $56,854.64 for dwelling coverage to plaintiff and Homecomings.

¶ 6    Homecomings took possession of the Hanover check and on January 11, 2007, disbursed $18,951.55 to plaintiff. The mortgage agreement between plaintiff and Homecomings provides that Homecomings has the right to "disburse [insurance] proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed." Homecomings did not make further disbursements of the Hanover proceeds.

¶ 7    In a letter dated November 30, 2006, Hanover denied plaintiff's request to disburse more funds because "the shared liability" of Hanover and defendant was in dispute. In the letter, Hanover said that it would "inform [plaintiff] immediately following the resolution of that issue between the insurance companies."

¶ 8    On March 28, 2007, defendant sent plaintiff a letter that read:

> "This letter is to follow up on our conversation that communicated that our policy applies as excess to any other insurance. We have required an additional copy of the policy that will be sent under separate cover. Our policy will not respond until all other insurance has been paid. A summary of the adjustment based on our policy language is below."

In the letter, defendant explained that Hanover would need to "pay up to $100,000 [under its policy] before [defendant] would pay" and that the "final due" amount payable under defendant's policy was $23,709.56 after subtracting the $500 deductible. The $23,709.56 "final due" amount was calculated based on defendant's assertion that Hanover was liable for $100,000 in dwelling coverage. The record does not show that plaintiff was subsequently informed of a resolution of the dispute between defendant and Hanover.

¶ 9    Sometime before August 15, 2007, plaintiff submitted a claim to the Illinois Department of Financial and Professional Regulation (Department) for amounts outstanding on her insurance claims allegedly due from defendant and Hanover. On February 22, 2008, defendant sent a letter to the Department, stating that defendant's policy is "lender placed coverage that is excess over any other collectible insurance and does not respond unless the coverage limit is exhausted."

¶ 10    Plaintiff filed a five-count "Class Action Complaint" against defendant, Homecomings and Hanover on September 4, 2009. The claims directed against defendant were for breach of contract, deceptive conduct in violation of the Consumer Fraud Act and a declaratory

judgment.

¶ 11 Defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2008)). In the motion, defendant argued that plaintiff's complaint was time-barred by the one-year contractual time limitation for filing suit contained in the endorsement to defendant's policy. Defendant also argued that plaintiff's consumer fraud claim was not actionable under the Consumer Fraud Act and was preempted by section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2008)). The trial court granted defendant's motion and dismissed plaintiff's complaint without prejudice on May 20, 2010. Plaintiff filed a motion for "additional time to file or move for leave to file [an] amended complaint." By agreement of the parties, the trial court granted plaintiff leave to file an amended complaint.

¶ 12 In her amended complaint, plaintiff noted that she:

"incorporates by reference and realleges the preceding allegations from her Class Action Complaint as if set forth herein in full, solely for purposes [of] preserving those matters on appeal. As such, the amended complaint does not plead any new cause of action against [defendant] or [Hanover]."

Plaintiff added Bank of New York Mellon Trust Company (Bank of New York) as a party, alleging breach of contract, breach of fiduciary duty and unfair conduct in violation of the Consumer Fraud Act. Plaintiff also alleged the latter two claims against Homecomings. Pursuant to a settlement agreement the case was dismissed with prejudice as against Homecomings and Bank of New York. Plaintiff then filed a notice of appeal, seeking reversal of the trial court's order granting defendant's motion to dismiss plaintiff's complaint pursuant to section 2-619. Although this court's jurisdiction is not challenged by either party, we note that because plaintiff elected not to amend the dismissed counts against defendant and realleged them only for the purposes of appeal, the dismissal order of May 20, 2010, now stands as a final appealable order in that regard.

¶ 13 A motion to dismiss under section 2-619 of the Code "admits the legal sufficiency of the plaintiff's claim but asserts [an] 'affirmative matter' outside of the pleading that defeats the claim." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). The purpose of a section 2-619 motion is "to dispose of issues of law and easily proved issues of fact early in the litigation." *Czarobski*, 227 Ill. 2d at 369. When reviewing a section 2-619 motion to dismiss, this court must determine " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Czarobski*, 227 Ill. 2d at 369 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). In doing so, we accept "as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts" and we "interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). Our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).

¶ 14 Plaintiff contends that the trial court erred in granting defendant's motion because the court could have concluded that there was a genuine issue of material fact about when the

one-year limitation period contained in the endorsement to defendant's policy began to run. Plaintiff argues that the one-year limitation period was tolled when she filed her proof of loss claim sometime before November 30, 2006, and therefore her complaint was timely filed. In support of this argument, plaintiff relies on the language of the endorsement and section 143.1 of the Insurance Code (215 ILCS 5/143.1 (West 2008)).

¶ 15     Defendant does not dispute that the one-year limitation period was tolled when plaintiff filed her proof of loss claim but responds that the March 28, 2007, letter was a denial of plaintiff's claim which triggered the commencement of the one-year limitation period. Defendant asserts that because plaintiff did not file her complaint before March 28, 2008, her complaint was time barred and the trial court did not err in dismissing it.

¶ 16     Plaintiff replies that, when considered in the light most favorable to her, the March 28, 2007, letter cannot be considered a denial of her claim so as to trigger the running of the one-year limitation period. She claims that even if the letter were a denial of coverage, then defendant violated section 919.80(d)(8)(C) of title 50 of the Illinois Administrative Code (Administrative Code) (50 Ill. Adm. Code 919.80(d)(8)(C) (2002)) by failing to notify her in writing of the number of days tolled and of the time remaining to bring suit. Plaintiff maintains that defendant is estopped from relying on the one-year limitation period as a defense because defendant's failure to comply with section 919.80(d)(8)(C) constitutes defendant's waiver of the limitation period.

¶ 17     The endorsement in defendant's policy reads as follows:

"No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

This one year period will be extended by the number of days between the date the Proof of Loss was filed and the date the claim is denied in whole or in part."

¶ 18     The last sentence of the endorsement traces section 143.1 of the Insurance Code, which provides:

"Whenever any policy or contract for insurance *** contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1 (West 2008).

See *Mathis v. Lumbermen's Mutual Casualty Insurance Co.*, 354 Ill. App. 3d 854, 856 (2004). Section 143.1 is an important statutory restriction on contractual time limitation provisions such as the endorsement here. *Mathis*, 354 Ill. App. 3d at 857; *American Access Casualty Co. v. Tutson*, 409 Ill. App. 3d 233, 236-37 (2011). The purpose of section 143.1 is to prevent an insurance company from sitting on a claim, allowing the limitation period to run and depriving the plaintiff of the opportunity to litigate her claim in court. *American Access*, 409 Ill. App. 3d at 237.

¶ 19     Here, the parties do not dispute that plaintiff filed a proof of loss claim sometime before November 30, 2006, which tolled the one-year limitation period. Rather, the sole issue is whether defendant's March 28, 2007, letter amounted to a denial of plaintiff's claim, triggering the commencement of the one-year limitation period. After examining the facts in a light most favorable to plaintiff, we find as a matter of law that it did not.

¶ 20    The March 28, 2007, letter reads:

> "This letter is to follow up on our conversation that communicated that our policy applies as excess to any other insurance. We have required an additional copy of the policy that will be sent under separate cover. Our policy will not respond until all other insurance has been paid. A summary of the adjustment based on our policy language is below."

In the letter, defendant explained that Hanover would need to "pay up to $100,000 [under its policy] before [defendant] would pay" and that the "final due" amount payable under defendant's policy was $23,709.56 after subtracting the $500 deductible. The letter also showed how these dollar amounts were calculated.

¶ 21    Nothing in the letter indicates that plaintiff's claim was denied. Defendant is unable to point to language in the letter that could be interpreted as a denial of plaintiff's claim. At most, the letter apprises plaintiff of the status of her claim and the policy's limits. This is not tantamount to a denial. Were we to find otherwise we would be contradicting the purpose of section 143.1 of the Insurance Code, which as mentioned is to prevent an insurance company from sitting on a claim, allowing the limitation period to run and depriving the plaintiff of the opportunity to litigate her claim in court. See *American Access*, 409 Ill. App. 3d at 237. Accordingly, the March 28, 2007, letter was not a denial of plaintiff's claim.

¶ 22    We believe this conclusion is supported by defendant's failure to advise plaintiff in the letter of the number of days the limitation period was tolled or how many days remained before her time to file suit expired as defendant would have been required to do by section 919.80(d)(8)(C) of title 50 of the Administrative Code upon denial of plaintiff's claim. See *Mathis*, 354 Ill. App. 3d at 856. Section 919.80(d)(8)(C) provides:

> "When the period within which the insured may bring suit under a residential fire and extended coverage policy is tolled in accordance with Section 143.1 of the [Insurance] Code [(215 ILCS 5/143.1 (West 2008))], the company, at the time it denies the claim, in whole or in part, shall advise the insured in writing of the number of days the period was tolled, and how many days are left before the expiration of the time to bring suit." 50 Ill. Adm. Code 919.80(d)(8)(C) (2002).

Here, the March 28, 2007, letter did not inform plaintiff of the number of days the one-year limitation period was tolled and how many days were left for plaintiff to bring suit. Under these circumstances, we cannot say the March 28, 2007, letter was a denial of plaintiff's claim.

¶ 23    Even were we to conclude otherwise, defendant's failure to comply with section 919.80(d)(8)(C) would lead us to find that there is a material question of fact as to whether defendant is estopped from relying on the limitation period as a defense. Contrary to defendant's argument that plaintiff has waived this issue on appeal, we find the issue preserved where plaintiff's amended complaint contains all material allegations of estoppel and the issue was argued at oral argument before the trial court. See *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 224 Ill. App. 3d 559, 584 (1991).

¶ 24    "Estoppel is based upon an insurer's conduct that misleads the insured to [her] detriment." *Mathis*, 354 Ill. App. 3d at 858. It is well settled that if the insurer's conduct in

investigating and/or negotiating a policy claim reasonably induces within the insured a false sense of security that the claim will be settled without suit and the insured, in reliance thereon, foregoes filing suit during the policy's limitation period, the insurer is estopped from later raising the limitation provision as a defense to an action on the policy. See *Mathis*, 354 Ill. App. 3d at 858; *Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.*, 69 Ill. App. 3d 422, 429 (1979). Importantly, "[i]t is not necessary that the insurer intentionally mislead or deceive the insured, or even intend by its conduct to induce delay"; rather, all that is necessary is that the insured reasonably relies on the insurer's conduct in foregoing filing a suit. *Salloum Foods*, 69 Ill. App. 3d at 429. Estoppel is generally a question of fact for the trier of fact. See *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 310 (1994); *Ahle v. D. Chandler, Inc.*, 2012 IL App (5th) 100346, ¶ 19. However, our conclusion that the March 28, 2007, letter was not a denial obviates consideration of this issue.

¶ 25    In sum, we find the trial court erred in granting defendant's section 2-619 motion to dismiss plaintiff's complaint because the March 28, 2007, letter was not a denial of plaintiff's claim and therefore the one-year contractual limitation provision was tolled as a matter of law pursuant to section 143.1. As such, plaintiff's breach of contract and declaratory judgment actions should not have been dismissed on the basis of the one-year limitation period.

¶ 26    We next consider whether the trial court erred in granting defendant's motion to dismiss plaintiff's consumer fraud claim on the basis that it was preempted by section 155 of the Insurance Code. Section 155 provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that *such action or delay is vexatious and unreasonable*, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to excess any of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." (Emphasis added.) 215 ILCS 5/155(1) (West 2008).

¶ 27    Section 155 is "an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 520 (1996). Section 155 was intended to make suits by policyholders more economically feasible and to punish insurers for vexatious and unreasonable conduct, *i.e.*, conduct that does not rise to the level of a well-established tort. *Cramer*, 174 Ill. 2d at 520-27; *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151, 168 (2004). Because well-established torts require proof of different elements and address

insurer misconduct that is not merely vexatious and unreasonable, section 155 was not intended to insulate insurers from such tort actions. *Cramer*, 174 Ill. 2d at 523.

¶ 28     It is well settled that an insurer may engage in conduct that " 'give[s] rise to both a breach of contract action and a separate and independent tort action.' " *Young*, 351 Ill. App. 3d at 169 (quoting *Cramer*, 174 Ill. 2d at 528). As a result, "[a] plaintiff may bring an independent tort action for insurer misconduct if the plaintiff alleges and proves the elements of the separate tort." *Young*, 351 Ill. App. 3d at 169. However, mere allegations of bad faith or unreasonable and vexatious conduct, without more, do not constitute a separate and independent tort. *Young*, 351 Ill. App. 3d at 169; *Cramer*, 174 Ill. 2d at 527. Such allegations are preempted by section 155. *Cramer*, 174 Ill. 2d at 530.

¶ 29     Here, in addition to a breach of contract claim, plaintiff also brought a claim of consumer fraud. "The relevant inquiry regarding a Consumer Fraud Act claim is whether the alleged conduct implicates consumer protection issues." *Young*, 351 Ill. App. 3d at 168. To state a claim under the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). A consumer fraud claim may not be based on a breach of a promise contained in the insurance policy. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169 (2005). "A breach of [a] contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery*, 216 Ill. 2d at 169.

¶ 30     Defendant argues that plaintiff's consumer fraud claim is preempted by section 155 because it was not separate and independent of her breach of contract claim. Defendant maintains that plaintiff's consumer fraud claim is premised and relies on the same facts as her breach of contract claim and is therefore not actionable under the Consumer Fraud Act. Plaintiff replies that her consumer fraud claim is not preempted by section 155 because it was raised separately and independently from her breach of contract claim. In resolving this issue, we look beyond the legal theory asserted in plaintiff's complaint to the conduct forming the basis of her consumer fraud claim. *Cramer*, 174 Ill. 2d at 527.

¶ 31     After reviewing plaintiff's complaint, we find her consumer fraud claim separate and independent of her breach of contract claim. Although plaintiff's consumer fraud claim incorporated by reference and realleged the factual basis underlying all of her claims, including breach of contract, it was not based on defendant's breach of the contractual promise contained in the insurance policy. Rather, plaintiff properly raised the three elements of a fraud claim set forth above.

¶ 32     First, a deceptive act or practice " 'involves more than the mere fact that a defendant promised something and then failed to do it.' " *Avery*, 216 Ill. 2d at 169 (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000)). Here, plaintiff alleged that defendant engaged in a deceptive act or practice by:

> (1) "failing to disclose to Plaintiff, at the time *** the policies were purchased and paid for, and indeed at all relevant times, both on the policy declaration pages and in any other policy documentation or correspondence, the amounts of coverage they were

willing to pay–or rather, the hefty degree of coverage below the policy limits that [it] was not going to pay";

　　(2) "failing to disclose to Plaintiff the amounts of the coverage they were willing to pay out (and despite the fact that Plaintiff had two insurance policies for her property)"; and

　　(3) "continuously refusing to honor Plaintiff's insurance claims, instead engaging in acts that are immoral, unethical and oppressive, by consistently informing Plaintiff that the amounts were being disputed when in reality neither company was actively pursuing the issue, and by ricocheting Plaintiff back and forth between both companies regarding the outstanding amount."

Although plaintiff's first two allegations refer to defendant's breach of a contractual promise and therefore do not support a consumer fraud claim (see *Avery*, 216 Ill. 2d at 169), we believe plaintiff's third allegation involves more than defendant's failure to fulfill a contractual promise. Namely, it calls into question defendant's conduct of failing to inform plaintiff of a resolution of the conflict between defendant and Hanover within the one-year limitation period. Accordingly, it satisfies the first element of a consumer fraud claim.

¶ 33　　Second, plaintiff alleged that defendant intended for her to "rely on [defendant's] omissions and herein alleged conduct and misrepresentations" and that she did rely on defendant's representations. We cannot say that these allegations of defendant's possible intentions are unreasonable given that: defendant did not inform plaintiff of a resolution regarding the shared liability of defendant and Hanover; plaintiff did not file suit within the one-year limitation period; and defendant raised the one-year limitation as a defense. In addition, plaintiff also alleged that the fact that defendant "did not reasonably disclose *** the method of insurance payouts concern[s] the type of information upon which consumers would be expected to rely in making decisions regarding insurance coverage." This allegation implicates consumer protection issues regarding disclosure and resolution of the interplay between a force-placed insurance policy and a policy procured by the homeowner. See *Young*, 351 Ill. App. 3d at 168 ("[t]he relevant inquiry regarding a Consumer Fraud Act claim is whether the alleged conduct implicates consumer protection issues"). These allegations were sufficient to satisfy the second element of a consumer fraud claim.

¶ 34　　Finally, it is undisputed that the occurrence of the alleged deception occurred during a course of conduct involving trade or commerce. Because plaintiff properly stated a consumer fraud claim that was separate and independent of her breach of contract claim, we find her claim was not preempted by section 155 of the Insurance Code and that the trial court erred as a matter of law in finding otherwise and granting defendant's section 2-619 motion to dismiss. In reaching this conclusion, we express no opinion regarding the merit of plaintiff's consumer fraud claim.

¶ 35　　For the reasons stated, we reverse the trial court's grant of defendant's section 2-619 motion to dismiss and remand the matter for further proceedings.

¶ 36　　Reversed and remanded.